Anthony J. HAASZ, Petitioner,

v.

**DEPARTMENT OF VETERANS AFFAIRS, Respondent.**

No. 01–3146.

United States Court of Appeals, Federal Circuit.

DECIDED: July 11, 2001.

Before NEWMAN, LOURIE, and GAJARSA, Circuit Judges.

## DECISION

PER CURIAM.

Anthony J. Haasz petitions for review of the final decision of the Merit Systems Protection Board denying his petition for enforcement of a settlement agreement with the Department of Veterans Affairs ("the agency"). *Haasz v. Dep't of Veter-* *ans Affairs,* Nos. NY–3443–00–0114–I–1, NY–0351–95–0238–C–1, NY–0351–95–0238–C–2, 87 M.S.P.R. 529 (M.S.P.B. Nov. 29, 2000) (final order). Because the Board did not err in determining that the agency did not breach the settlement agreement, we *affirm.*

## DISCUSSION

Mr. Haasz was employed by the agency as a Material Handler, WS–8. *Haasz v. Dep't of Veterans Affairs,* No. NY–0351–95–0238–C–1, slip op. at 2 (M.S.P.B. Mar. 31, 2000) (*"Haasz I"*). He was separated from that position by a reduction-in-force on November 30, 1994 and appealed the termination to the Board. *Id.* The parties entered into a written settlement agreement, effective January 9, 1995, that allowed him to accept the position of an Electrical Worker, WG–8, retroactive to December 1, 1994. *Id.* Under the agreement, he was "entitled to grade and pay retention on the same basis" as if he had accepted the WG–8 position prior to the separation. *Id.* On the other hand, the agreement provided as follows:

· 2. The appellant waives any claim to any reinstatement, preferential or priority employment consideration or rights other than his appointment as an Electrical Worker, WG–8 at the VAMC, Lyons, N.J. as set forth above.

On July 20, 1997, Mr. Keith DeGroat, WG–9, was noncompetitivily detailed to an Engineering Technician, GS–7 position. *Id.* at 3. Later, on January 6, 2000, DeGroat was selected for a GS–11 position, based in part on a determination that he met that position's minimum qualification requirements. *Id.* at 4. Haasz had also applied for that position and was qualified for it, but was not selected. *Id.* Haasz petitioned the Board for enforcement of the settlement agreement, alleging that

the selection of DeGroat for the GS–11 position and DeGroat's noncompetitive detailing violated Haasz's right to priority consideration. *Id.* He also alleged that DeGroat was not in fact qualified for the GS–11 position. *Id.* Although the Administrative Judge ("AJ") determined that Haasz had unreasonably delayed in filing the petition challenging DeGroat's noncompetitive detailing, the AJ determined that Haasz's petition with respect to the non-selection for the GS–11 position was timely filed. *Id.* at 6–7. Reaching the merits, the AJ determined that the agency had not breached the settlement for failing to select Haasz for the GS–11 position because he had waived any right to priority consideration in paragraph two of the 1995 settlement agreement. *Id.* at 8.

In a separate action, on March 28, 1999, the agency reclassified John F. Ditmars's position from Engineering Technician, GS–11, to Engineering Technician, GS–12 because of an "accretion of duties." *Haasz v. Dep't of Veterans Affairs,* No. NY–0351–95–0238–C–2, slip op. at 3 (M.S.P.B. Apr. 19, 2000) (*"Haasz II"*). Haasz again petitioned for enforcement of the 1995 settlement agreement, alleging that Ditmars's non-competitive promotion violated Haasz's right to apply and compete for that position. *Id.* at 4. The AJ determined that Haasz's petition was timely filed, but again held that the agency had not breached the 1995 settlement agreement because in paragraph two of that agreement, Haasz had expressly waived his competitive placement rights. *Id.* at 6.

The AJ also determined in each decision that Haasz did not show that the agency had committed a prohibited personnel practice under 5 U.S.C. § 2302(b)(9), finding that Haasz had failed to establish a nexus between Haasz's appeal of the reduction-in-force action and Haasz's non-selection. *Haasz I* at 10; *Haasz II* at 8.

The AJ also denied Haasz's request for additional discovery, stating "the information sought was unnecessary to resolve the issues raised in the petition." *Haasz II* at 8–9, n. 5.

Haasz appealed both decisions to the Board, which denied his petition for review and rendered the initial decisions final. 5 C.F.R. § 1201.113(b) (2000). Haasz timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9) (1994).

■ On appeal, Haasz argues that the language "[t]he appellant will be entitled to grade and pay retention *on the same basis* as if he had accepted the WG–8 Electrical Worker position prior to the termination of his employment on November 30, 1994" entitles him to the same promotional opportunities as other federal employees. Moreover, he urges that he did not waive any "future" priority/preferential treatment rights in paragraph two of the agreement because that paragraph referred only to the priority selection of displaced or surplus employees under the Career Transition Assistance Plan, and not to later-arising priority/preferential treatment rights. As an example of such rights, he asserts that the agency's "Handbook 5330," effective starting in 1996, entitles him to priority/preferential promotional treatment as a "surplus or displaced VA employee" who has been "adversely affected by the VA restructuring and downsizing." Finally, Haasz argues that DeGroat and Ditmars's promotions were made in retaliation for Haasz's appealing the reduction-in-force action to the Board, and that he has been denied the opportunity to discover evidence that would assist him in proving his claims.

The scope of our review in an appeal from a decision of the Board is limited. We must affirm the Board's decision unless it was "(1) arbitrary, capricious, an

abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c) (1994); *Gibson v. DVA*, 160 F.3d 722, 725 (Fed.Cir.1998). We review the Board's construction of the agreement *de novo*. *Massie v. United States*, 166 F.3d 1184, 1187 (Fed.Cir.1999).

We agree with the agency that the settlement agreement has not been breached. The very settlement that Haasz seeks to enforce contains an explicit waiver that defeats his claim for priority placement. When Haasz accepted employment, he "waive[d] any claim to any reinstatement, preferential or priority employment consideration or rights other than his appointment as an Electrical Worker, WG–8." That language is unambiguous. Haasz mistakenly relies upon the generally available preferential or priority employment consideration rights in the agency's Handbook 5330 for VA employees who have been displaced. Although Handbook 5330 suggests that displaced VA employees have preferential or priority employment consideration rights, Haasz's specific waiver in the settlement agreement trumps any generally available rights described in the Handbook. Haasz is not similarly situated to other employees covered by the Handbook because Haasz's re-employment was provided only by the settlement agreement, under which he waived the rights that he now asserts.

We also agree with the agency that Haasz did not prove a nexus between Haasz's appeal of the reduction-in-force and the alleged retaliation of Haasz's non-selection. To establish that the agency committed a prohibited personnel practice under 5 U.S.C. § 2302(b)(9), Haasz must show that he engaged in protected activity, the deciding official knew of the protected activity, the agency's action under review could have been retaliation under the circumstances, and there was a genuine nexus between the alleged retaliation and the agency's action. *Warren v. Dep't of the Army*, 804 F.2d 654, 656–58 (Fed.Cir. 1986). The Board determined that Haasz had not satisfied the last factor of that test – a nexus between the alleged retaliation and the agency's action – because the appeal from the reduction-in-force and Haasz's non-selections were remote in time, and Haasz did not introduce any evidence that the selecting officials were involved in the original reduction-in-force action or exhibited any animus toward Haasz. *Haasz I* at 10; *Haasz II* at 8. Although Haasz has argued that he is entitled to discover additional evidence to support his retaliation claim, he has not shown that the Board's discovery rulings were an abuse of discretion, or caused substantial harm or prejudice that could have affected the outcome of the case. *Curtin v. Office of Pers. Mgmt.*, 846 F.2d 1373, 1378–79 (Fed.Cir.1988). We are also unpersuaded by Haasz's argument that he only needs to prove that he has not been allowed to compete fairly, and that he does not need to prove retaliation. With respect to his prohibited personnel practice claim, Haasz must establish the factors set forth in *Warren*, 804 F.2d at 656–58. We agree with the agency that the Board did not err in determining that Haasz has failed to prove at least one of those factors, the nexus between the alleged retaliation and the protected activity. We therefore affirm the decision of the Board that Haasz did not prove that, in retaliation for filing his prior Board appeal, the agency breached the settlement agreement by not selecting him.

We have considered Haasz's remaining arguments and we conclude that they are without merit. Haasz cannot now obtain a

modification of the terms of the agreement by which he secured his present employment. Those terms unequivocally state that he waived the identical rights that he now asserts. No amount of evidentiary discovery would afford him the rights that he has waived. Because the Board's decision was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, we affirm.